IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EILEEN RAMOS ROSARIO,

Plaintiff,

v.

UNIVERSITY OF PUERTO RICO, et al.,

Defendants.

CIVIL NO. 21-1567 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Eileen Ramos Rosario ("Plaintiff") brings the present case against her employer, the University of Puerto Rico, Carolina ("UPRC", or "Defendant") alleging discrimination of the basis of race under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*, and age under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA").[1] She also brings forth retaliation claims under the same federal statutes, as well as under state law pursuant to Law No. 115, P.R. Laws Ann. tit. 29, § 194 *et seq.*, and seeks damages therefrom under P.R. Laws Ann. tit. 31, § 10801.

Plaintiff avers she was subjected to adverse employment actions, such as the denial of full-time temporary appointments, denied the assignment of specialized courses, and being assigned less credit hours after she opposed discriminatory practices at the UPRC's Criminal Justice Department where she was a professor. In contrast, she claims that

---

[1] Plaintiff initially also filed suit against several individual Defendants who were UPRC's employees and later voluntarily dismissed the claims against those defendants. See Docket Nos. 92, 100 and 103. Only the UPRC remains a defendant in the case.

younger, white, and less experienced professors were granted these benefits. This discrimination continued after she filed an administrative charge on the basis of age and race discrimination before the Equal Opportunity Employment Commission ("EEOC") in December of 2020, which ultimately resulted in a lower salary and less benefits.

Before the Court are Defendant's "Motion for Summary Judgment" (Docket No. 66); Plaintiff's Opposition (Docket No. 91); Defendant's Reply to Plaintiff's Opposition (Docket No. 120); and Plaintiff's Sur-Reply thereto (Docket No. 128).

The Court finds there are issues of material fact that prevent summary disposition of this case. Accordingly, Defendant's Motion for Summary Judgment is DENIED.

## STANDARD

Summary judgment is appropriate if "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (a) and (c). Pursuant to the explicit language of the rule, the moving party must establish this two-fold element. Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed material if it could potentially affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder,

examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must then "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts" via a short and concise statement. Loc. Rule 56 (c). If they so wish, they may submit a separate statement of additional facts in support of their claims.

Time and again, the Court of Appeals for the First Circuit has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-26 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is - and what is not - genuinely controverted.'" Calvi v. Knox Cnty, 470 F.3d 422, 427 (1st Cir. 2006) (cleaned up). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Loc. Rule 56(e); Rodríguez-Severino v. UTC Aerospace Sys., 52

F.4th 448 (1st Cir. 2022).

## UNCONTESTED FACTS

1. Plaintiff began providing teaching services at the UPRC in April of 2005. (D. Exhibit 1, p. 32, l. 1-12).

2. Plaintiff holds a Bachelor of Arts from the University of Puerto Rico (Cum Laude), and a Juris Doctor (Magna Cum Laude) and a Master of Laws from the University of Puerto Rico School of Law. She is currently the only professor at UPRC's Criminal Justice department with a Master of Laws. (P. Exhibit 4, ¶ 2).

3. UPRC employs an academic calendar based on three (3) trimesters and a summer session, instead of a two-semester academic calendar. Classes for the first trimester run from the beginning of September until the end of November; the second trimester runs from the beginning of January until the end of March; and the third trimester runs from the beginning of April until the end of June. (D. Exhibit 8, ¶19).

4. Tenured professors and full-time contract professors have a required courseload, and may request to offer additional courses for extra compensation. (D. Exhibit 8, ¶ 20).

5. At UPRC's Criminal Justice Department, Plaintiff is qualified to teach a total of fourteen (14) courses, as follows: Social Science I (CISO 3231); Social Science II (CISO 3232); Introduction Justice Criminal System (JUST 3005); Introduction Police Science (JUST 3015); Civil Rights (JUST 3016); Introduction Correctional System (JUST 3017); Criminal Law (LESO 3205); Criminal Procedure (LESO 3207); Evidence (LESO 3208); Criminal Investigation I (LESO 4001); Criminal

<u>Eileen Ramos Rosario, et al, v. University of Puerto Rico, et al.</u>
Opinion and Order
Civil 21-1567 (CVR)
Page 5

Investigation II (LESO 4002); Selected Topics Seminar (LESO 4505); Juvenile

Justice (JUVE 4005); Criminology (SOCI 3005).   (P. Exhibit 4, ¶ 6).

6.   Plaintiff is aware that the administrative process within the UPRC to offer a full-

time contract requires a justification from the Department Director, as well as

approval from the Dean of Academic Affairs and from the Chancellor.  (D. Exhibit

1, p. 91, l. 1-25; p. 92, l. 1-3).

7.   Before 2017, Plaintiff worked sometimes under a service contract and other times

under a part-time temporary contract.  From 2007 through 2010, she had no

contract at all.  (D. Exhibit 2).

8.   On August 1, 2017, Dr. Ralph Otero ("Otero") was appointed Director of the

UPRC's Criminal Justice Department.  (D. Exhibit 1, p. 62, l. 14-25; p. 63, l. 1-5;

D. Exhibit 4, p. 71, l. 14-23).

9.   During Otero's directorship, Plaintiff was granted a full-time temporary contract

from September 11, 2017, to June 30, 2018, to offer four (4) courses in the first

trimester and collaborate with the Director in administrative tasks.    The

academic and administrative load was equivalent to fifteen (15) credits. The

contract was later amended to expire on July 6, 2018.  (D. Exhibit 1, p. 59, l. 19-

22; p. 82, l. 4-10; p. 93, l. 3-25, p. 94, l. 1-2; D. Exhibits 2 and 5).

10.  Plaintiff was granted another full-time contract for the 2018-2019 term,

beginning on September 4, 2018, to June 19, 2019.  (D. Exhibits 2 and 6).

11.  Plaintiff was granted another full-time contract for 2019-2020 term, beginning

on September 3, 2019, to June 30, 2020, to teach four (4) courses equivalent to

twelve (12) credits in the first trimester.  The term contract was later amended to

expire on July 7, 2020.  (D. Exhibits 2 and 9).  This would be her last full time-contract appointment.

12. In September 2019, José Martínez ("Martínez") was appointed Director of the Criminal Justice Department at UPRC.  (D. Exhibit 11, p. 11, l. 19-25).

13. Professor Rolando Rivera Guevara ("Rivera") was appointed Supervised Practice Coordinator for the 2020-2021 term. The Supervised Practice Coordinator is responsible for identifying and assigning students to practice locations within public or private agencies and entities.  (D. Exhibit 1, p. 118, l. 23-25; p. 119, l. 1-25; D. Exhibit 8, ¶¶ 15 and 18).

14. Before the 2020-2021 term began, Rivera had already been performing the supervised practice coordination responsibilities between January and June 2020, and had been granted a full time contract appointment for such purpose. (D. Exhibit 8, ¶ 18; D. Exhibit 23).

15. On May 22, 2020, Plaintiff sent an email to Martínez informing him of her interest to teach a summer course, JUST 3005.  Martínez replied that all summer courses had already been assigned.  (D. Exhibit 28).

16. Prior to this exchange, Martínez did not consider Plaintiff as a potential candidate to teach summer courses because she had never taught them in the past and he believed that she was not interested.  He never asked her of her availability or interest to do so.  (D. Exhibit 1, p. 173, l. 7-9; D. Exhibit 8, ¶ 30; P. Exhibit 9, ¶ 16).

17. On July 21, 2020, the new Interim Dean of Academic Affairs, Dr. Rafael Méndez Tejeda ("Méndez"), sent a communication to all Academic Department Directors

informing them that due to budget and student reductions, they needed to reconsider the quantity of sections per course. Méndez requested all directors to make a projection of the academic load of the tenured faculty within their departments, and requested justification for all annual contracts for ten (10) or twelve (12) months that were indispensable to fulfill the designated tasks. (D. Exhibit 25).

18. The Criminal Justice Department suffered an approximate reduction of 30% in student enrollment between 2017 and 2021. (D. Exhibit 8, ¶ 34; D. Exhibit 35). This situation notwithstanding, it hired new part-time contract professors in the 2021-2022 term. (D. Exhibit 8, ¶¶ 40, 41 and 42).

19. Professors Rolando Rivera, Mariela Jiménez Lopez, Maribel Gorbea Díaz, Valerie Rivera, Daniel Feliciano, Carlos Viñas, Alexander Reynoso, Lyshaira Sánchez, and Benny Liz González all have lesser teaching experience than Plaintiff within the Criminal Justice Department. All of them are younger than Plaintiff, are non-African American and were assigned more classes than Plaintiff after December 2020. (P. Exhibit 4, ¶¶ 20, 21; P. Exhibits 20 and 21, Nos. 1 and 3).

20. During the years Plaintiff has been a professor at UPRC, she has undertaken many non-remunerated activities for the benefit of the Criminal Justice Department, its students, professors, and general university community, among them:

   a. Animal Protection Legislation, May 21, 2019;

   b. Legal Remedies for Functional Diversity, October 15, 2019;

    c.   University of Puerto Rico School of Law orientation: October 22, 2019;

    d.   Guided tour of the Puerto Rico Supreme Court, October 29, 2019;

    e.   University of Puerto Rico School of Law orientation: October 27, 2020;

    f.   Wrongful Convictions: March 12, 2020;

    g.   The reality of the juvenile justice system in Puerto Rico, March 4, 2021;

    h.   The deaf community in Puerto Rico and the access to justice: June 15, 2021;

    i.   University of Puerto Rico School of Law orientation: November 4, 2021;

    j.   University of Puerto Rico School of Law orientation: March 16, 2023;

    k.   University of Puerto Rico School of Law orientation: October 19, 2023;

    l.   University of Puerto Rico School of Law orientation: September 24, 2024.  (P. Exhibit 4, ¶ 8).

21. Plaintiff was granted a part-time temporary appointment from September 1, 2020, to November 30, 2020, to teach two (2) on-line courses, equivalent to 6 credits.  (D. Exhibit 1, p. 96, l. 22-25; p. 97, l. 1; D. Exhibit 36-A).

22. On December 23, 2020, Plaintiff filed a charge of discrimination before the Equal Employment Opportunity Commission (hereinafter "EEOC").  (D. Exhibit 1, p. 161, l. 20-25; p. 162, l. 1-5).

23. Plaintiff was granted a part-time temporary appointment from January 12, 2021, to April 5, 2021, to teach three (3) courses, equivalent to nine (9) credits. (D. Exhibit 36-B). She had originally been granted only two (2) courses (or six (6) credits) but was given an additional course to teach after another professor declined to teach it. (P. Exhibit 12, p. 97, l. 17-25; p. 98, l. 1-2).

24. Plaintiff was granted a part-time temporary appointment from April 14, 2021, to June 30, 2021, to teach two (2) courses, one of them being on-line, equivalent to six (6) credits. (D. Exhibit 36-C).

25. Plaintiff was granted a part-time temporary appointment from September 7, 2021, to December 1, 2021, to teach one (1) course on-line, equivalent to three (3) credits. (D. Exhibit 1, p. 208, l. 8-11; Exhibit 42-A).

26. Plaintiff was granted a part-time temporary appointment from January 11, 2022, to April 1, 2022, to teach one (1) course on-line, equivalent to three (3) credits. (D. Exhibit 42-B).

27. Plaintiff was granted a part-time temporary appointment from April 18, 2022, to June 30, 2022, to teach one (1) course on-line, equivalent to three (3) credits. (D. Exhibit 1, p. 222, l. 10-18; D. Exhibit 42-C).

28. During the time Plaintiff was only assigned one (1) course to teach, other part-time contract professors were assigned more courses. (Docket No. 90, p. 27, ¶ 21).

29. As of December 2020, Martínez was aware that Plaintiff had good evaluations from her peers, from the other professors, and from her students. (P. Exhibit 18, p. 54, l. 9-15).

30. Plaintiff's wages at UPRC for the years 2017 through 2023 were: 2017 - $21,744.00; 2018 - $50,823.00; 2019 - $47,942.00; 2020 - $44,998.00; 2021 - $12,259.00; 2022 - $6,129.00; 2023 - $10,217.00.  (P. Exhibit 4, ¶ 22).

31. Certification 33 was issued by the UPRC Academic Senate and indicates as follows: "The main criteria that the academic departments will use to assign courses to the professors: seniority; rank; academic preparation; type of appointment (permanent, probationary, contract, etc.") (P. Exhibit 9).

## LEGAL ANALYSIS

### A. Title VII and ADEA Discrimination.

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).  In making a claim for employment discrimination, a plaintiff may rely on direct evidence or by using the now familiar burden shifting method from the landmark case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). To succeed on such a claim, "the complainant . . . must carry the initial burden under the statute of establishing a *prima facie* case of . . . discrimination." McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.  Plaintiff meets this standard by showing: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment; and (4) a causal connection between the protected class and the adverse employment action.  Luceus v. Rhode Island, 923 F.3d 255, 258 (1st Cir. 2019).

Similarly, the ADEA prohibits employers from discriminating against employees based on age.  See 29 U.S.C. § 623(a).  "The ADEA requires that personnel actions

affecting most employees who are forty years of age or older be free from age-based discrimination." Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005) (quoting 29 U.S.C. § 633a(a)).   In a similar vein, the ADEA requires a plaintiff to establish: (1) she was at least forty years old; (2) qualified for the position held; (3) suffered an adverse employment action; and (4) the employer later filled the position with a younger person or did not treat age neutrally in taking the adverse action. Martínez v. Novo Nordisk Inc., 992 F.3d 12 (1st Cir. 2021); Vélez v. Thermo King de P.R., Inc., 585 F.3d 441 (1st Cir. 2009).

For both ADEA and Title VII, after the *prima facie* case is met, the burden then shifts to the defendant "to articulate a legitimate, nondiscriminatory basis for the termination." Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563, 571 (1st Cir. 2012). Once a defendant does this, a plaintiff must then show that the proffered reason for the discharge was merely a pretext for impermissible discrimination. Id.; Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991); Freeman v. Package Mach. Co., 865 F.2d 1331, 1336 (1st Cir. 1988).

On the other hand, in order to make a showing of pretext, a plaintiff must "elucidate specific facts" from which a jury could determine that the reason given is a sham intended to cover up the employer's real motive, discrimination. Meléndez v. Autogermana, Inc., 622 F.3d 46, 52 (1st Cir. 2010).  Plaintiff, however, must do more than dispute the legitimacy of the employer's asserted justification; she must also offer evidence "of the employer's discriminatory animus." Vega v. Kodak Caribbean, 3 F.3d 476, 479 (1st Cir. 1993); Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706 (1993) ("liability under the ADEA depends upon whether age 'actually motivated the

employer's decision'").

With this in mind, the Court's job is to examine whether the evidence, presented as a whole, is sufficient for a reasonable fact-finder to determine that the UPRC's decisions in this case were motivated by discriminatory animus based on Plaintiff's age and race. See Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 335 (1st Cir. 1997) (citing LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir.1993)).

The *prima facie* burden is not an onerous one.[2]  The Court therefore will sidestep the *prima facie* analysis, and jumps directly into pretext, which is the thrust of UPRC's defense.  See Mojica v. El Conquistador Resort & Golden Door Spa, 714 F.Supp.2d 241, 258 (D.P.R. 2010) ("when the employer has asserted a legitimate nondiscriminatory reason for its adverse employment action . . . the Court can assume without deciding that the plaintiff has made a prima facie showing in order to address pretext"); Agosto-Hernández v. PRWireless PR, LLC, Civil No. 21-1382 (CVR), 2024 WL 3179430, at *10 (D.P.R. June 26, 2024); Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003); Ortíz-Rivera v. Astra Zeneca LP, 596 F.Supp.2d 231, 242 (D.P.R. 2009) (citing cases where the court bypassed the *prima facie* inquiry after employer asserted a legitimate non-discriminatory reason for the employment action).

The UPRC divides its defense of Plaintiff's discrimination allegations into four (4) main issues, to wit: 1) the non-renewal of Plaintiff's full-time temporary appointment after the 2019-2020 academic year; 2) the granting of  a full-time temporary contract to Rivera and the assignment of courses to him; 3) the lack of course assignments to Plaintiff

---

[2] The parties do not contest that Plaintiff is African American and over the protected age. Therefore, the Court assumes that she met both these requirements.

for the summer of 2020; and 4) the course assignments to other part-time professors for the  2020-2021 and 2021-2022 academic years.

1. Non-renewal of Plaintiff's full-time temporary appointment after the 2019-2020 academic year.

Plaintiff claims that Defendant refused to renew her full time temporary contract after 2019-2020 academic year.  Instead, she was given a part-time appointment, no administrative duties and less courses to teach.   In particular, after Plaintiff filed her EEOC claim in December 2020, her course load was slowly reduced and she ended up teaching only one (1) online course (or three (3) credits) for five (5) consecutive trimesters.[3]

Defendant's position is that the granting of a full time temporary contract, which involves academic coursework and administrative duties, requires a justification from the Department Director, the approval of the Dean of Academic Affairs and the Chancellor. Plaintiff's full-time temporary contract after 2019-20 term was not approved because Plaintiff was not performing any administrative tasks that could justify the renewal. Defendant also avers that Plaintiff was aware that renewal of her full time contract was not guaranteed, as her appointment letters every year so stated.

This defense is a non-starter, as the UPRC's motion admits that during the 2018-2019 and 2019-2020 terms, Plaintiff had a full-time contract and did not perform any administrative tasks within the Director's office.  (Docket No. 66, p. 13).  Plaintiff has additionally brought forth evidence that there were over ten (10) professors at the UPRC

---

[3] This information was contained in a chart prepared by Plaintiff as part of its uncontested facts.  Defendant did not deny the information contained in this chart and merely qualified it, simply arguing it did not include information as to "other contract professors."  (Docket No. 90, p. 27).

from 2020-2021 through 2023-2024, who were granted full-time contracts even though they were not performing any administrative tasks. (D. Exhibit 4, ¶¶ 18 and 19; Docket No. 119, Exhibit 4). In fact, Defendant admits that "there are some exceptions for certain professors where I [Martínez] authorized a full time contract appointment for professors who did not perform administrative duties"[4], and defends its decision by saying these exceptions were somehow otherwise justified, yet provides no such explanation to the Court. The fact that Defendant made such exceptions for other professors and not for Plaintiff casts doubt on its alleged nondiscriminatory reason not to renew Plaintiff's full-time contract. This, in turn, creates an issue of material fact as to Defendant's motivation that must be resolved by a jury.

As to Defendant's argument that there was no guarantee that Plaintiff's contract was going to be renewed, it is correct in stating that transitory employees do not have a property interest in continued employment. Nevertheless, Plaintiff brought forth a discrimination claim, not a due process claim. Puerto Rico law has been clear that, while transitory employees generally have no legitimate expectation of contract renewal, they are nonetheless protected from discriminatory motivated non-renewals. See Peña-Alcantara v. Corr. Health Servs., Corp., Civil No. 07-1651 (CCC), 2009 WL 890467, at *5 (D.P.R. Mar. 24, 2009); Nieves-Villanueva v. Soto Rivera, 133 F.3d. 93, 98 (1st Cir. 1997); Figueroa v. Aponte-Roque, 864 F.2d 947, 951 (1st Cir. 1989). In the same vein, a failure to renew a temporary contract because a plaintiff exercised her protected right to file a

---

[4] Docket No. 119, Exhibit 4, ¶ 7.

discrimination charge may be seen as retaliation under 42 U.S.C. § 2000e-3.  Peña-Alcantara, 2009 WL 890467, at *5.

For this reason, Defendant's argument holds no water at the summary judgment stage. Whether it failed to renew Plaintiff's full-time contract due to race and age or for other legal reasons is a matter for the jury to entertain at trial.

2. <u>The granting of a full-time temporary contract to Rivera and the assignment of courses to him; the course assignments to other part-time professors for the 2020-2021 and 2021-2022 academic years.</u>

The Court discusses these two (2) items together, as it finds they are intertwined.

Plaintiff alleges that, instead of renewing her full time contract, Defendant awarded it to Rivera instead, who is white, younger, less experienced, and with lesser rank, seniority, and academic credentials than her.  In so doing, she proffers the UPRC did not comply with the criteria established in Certification 33, which was issued by the UPRC's Academic Senate in an effort to establish, among others, a uniform policy for assigning courses and compensation, and requires such elements to be considered. Plaintiff also avers that she had requested some of these courses be assigned to her because she had previously taught them, a request which was denied.  After Plaintiff filed her EEOC complaint in December 2020, she suffered a steady decline in the assignment of credits, and was ultimately assigned the minimum of three (3) credits (one (1) class, online) for five (5) consecutive trimesters.  In the meantime, several of the other part-time contract professors with less seniority, less rank, less experience and who were younger and white were assigned more course credits, again in violation of Certification 33.

Defendant again replies that Plaintiff had no expectation of being continuously awarded a full time contract, and that Rivera was amply qualified for the position.

Defendant posits that Rivera had priority in selecting his courses and the right to select additional courses as well because he held a full-time temporary appointment during 2020-2021 and 2021- 2022.

Defendant then spends a great deal of time defending the order which the department uses to award classes. Its argument is that the appointed faculty (tenured and temporary appointments) have priority in selecting the courses they wish to teach. After this, the full-time contract professors make their choices, who also have the option of selecting more courses to teach with additional compensation, up to a certain maximum number of courses each trimester. Whatever is left after this is assigned to the part-time temporary contract faculty members. Defendant avers its actions were justified because the department director has ample discretion to assign courses to part-time contract professors.

The UPRC then inexplicably states that Certification 33, issued by the Academic Senate, is not used in the assignment of courses to part-time contract faculty. Rather, the choices are made based on the department's needs, as well as course and professor availability, and that seniority and rank are only utilized for purposes of establishing a priority in the selection of courses among tenured professors. But Certification 33 does not state that it will only be used with tenured professors, as Defendant avers, and on the contrary, clearly states it applies to contract professors as well. Defendant has not explained the reason for this deviation, or why a certification issued by the UPRC's Academic Senate should not be followed. Additionally, its accommodating statement that

"it has always been done" this way does not justify this major discrepancy.[5]

The UPRC's failure to abide by Certification 33, insisting instead that the choices are basically left to the whim of the department's directors, in turn, lends itself to the precise issue in this case, to wit, arbitrary and discriminatory assignments, which could be interpreted by the trier of fact as pretextual. This is yet another reason why this matter should be left for a jury to decide.

Defendant then attempts to justify its actions in assigning Plaintiff less courses due to reduced student enrollment in the Criminal Justice Department. Its position is that the department underwent a decrease in enrollment, from having 993 students during the 2017-2018 term to having only 688 by the 2020-2021 term. Nonetheless, the evidence provided by Defendant directly contradicts this argument, because even though it suffered a reduction in student enrollment from 2017 through 2021, it actually hired *more* part-time professors for the following term of 2021-2022 with no evidence of an enrollment increase to justify it. (D. Exhibit 8, ¶¶ 40, 41, 42). In the meantime, less senior professors with less experience, rank, preparation, younger than Plaintiff, and who were not African American, were all assigned more courses.

Faced with these facts, the UPRC then changes gears in its Reply, and avers instead that the recruitment of new part-time contract professors is a common practice that is

---

[5] In fact, the UPRC directly contradicts itself as to this matter in the "Statement Under Penalty of Perjury" it submitted from Kattia Walters ("Walters"), Director for the Criminal Justice Department from 2018 to 2019. In Walter's statement, she says that the assignment of courses for part-time contract professors is not based on seniority. Rather, appointments are made depending on the department's needs, and course and professor availability. In the very next sentence, however, she says that she does not interpret Certification 33 "to require a different process" from the one she just described. (Docket No. 119, Exhibit 3, pp. 15-17). On the contrary, Certification 33 explicitly says that seniority ("antiguedad") must be the first consideration when assigning courses, followed by rank and academic preparation. (Docket No. 90. Exhibit 9). The UPRC offers absolutely no explanation why the process within the Criminal Justice Department should differ from the process outlined in Certification 33.

deemed beneficial because it creates new experiences for the students.  (Docket No. 119, Exhibit 2, p. 3).  This reasoning, however, directly contradicts its own position that Plaintiff was assigned less courses because the student enrollment had decreased, and once again, could be perceived by a trier of fact as pretextual.

Defendant also claims that Plaintiff was uncooperative regarding non-remunerated faculty activities.  Plaintiff directly refutes this, listing the many non-remunerated activities that she offered and participated in, such as various orientations about different topics, and on one occasion, a guided tour of the Puerto Rico Supreme Court.  (P. Exhibit 6, ¶ 8).  Defendant admits Plaintiff performed these tasks, but fails to explain why it perceived her as a "non-team player" in spite of this extensive laundry list of activities, again creating an issue of material fact that goes to the heart of this case and to Defendant's proffered non-discriminatory justification for its actions.

In sum, all these factual discrepancies regarding the UPRC's given justifications are issues that a jury, as the trier of fact, must weigh and decide upon at trial.

3.  Lack of course assignments to Plaintiff for the summer of 2020.

As to the issue of lack of course assignments for summer 2020, the UPRC proffers that Plaintiff never taught summer classes before, so Defendant did not consider her a resource when planning the summer 2020 class itinerary.  By the time Plaintiff asked for such an assignment in May 2020, it was too late because the schedule had already been prepared. Defendant also contends that Plaintiff was not flexible when it came to scheduling courses, as she was only available to teach online and not in person after the COVID-19 pandemic.

This argument is challenged by Plaintiff, and she asserts that the reason she did not teach a hybrid course following COVID-19 was that Defendant never gave her a response when she asked about precautionary measures the department was taking. She also points to a lack of evidence on this record to indicate that she was inflexible or unwilling to teach in person courses. On the contrary, Defendant admits it merely "believed" Plaintiff was not interested and never asked Plaintiff directly about this matter. (D. Exhibit 8, ¶ 30; P. Exhibit 4, ¶ 16). Similar to the other material facts Plaintiff has raised in this case, whether this assumption was correct or not is for the trier of fact to determine.

Plaintiff also brings additional evidence of discrimination in the form of testimony of two (2) other witnesses. Yaritza Pérez Rivera ("Pérez") is an Associate Professor in the Criminal Justice Department. As part of Plaintiff's opposition to the motion for summary judgment, she submitted an "Unsworn Statement Under Penalty of Perjury" (the "Pérez Statement"), where Pérez denounced retaliatory acts taken by Martínez against her (Pérez) when she refused to cooperate with the UPRC in this case. (P. Exhibit 28). Pérez stated, among others, that after she did not meet with Defendant's legal representatives and refused to be a witness for Defendant in this case, she was stripped of certain duties without proper procedure, was required to submit extra reports that had never been previously requested, and was harassed. Pérez further indicated that she believed Plaintiff was a valuable member of the UPRC's community and recommended her for several appointments, and saw how Defendants would not appoint Plaintiff. Pérez accused the UPRC of engaging in "a pattern of violent conduct, harassing, discriminatory, and retaliatory conduct towards me ... for not attending the May 16, 2024 meeting with

the University attorney in the Eileen Ramos discrimination case against the UPR-Carolina." <u>Id.</u> Pérez also indicated that the course assignments are made "on the basis of age, race, cronyism and favoritism," and that "there is a hostile environment in the Criminal Justice Department of the UPR Carolina against Black women and women in general perceived by me during the last three years, particularly during and after the beginning of the COVID pandemic in 2020." <u>Id.</u> This affirmation by Pérez, both as a participant and a witness to these events, is plainly sufficient to create yet another issue of fact as to Defendant's proffered non-discriminatory reasons for its actions.

Furthermore, Dr. Ralph Otero ("Dr. Otero"), former Director for the Criminal Justice Department, also stated that after he left the directorship, he perceived discriminatory animus towards Plaintiff on behalf of the administration. Dr. Otero spoke to several of the program's directors and sent several memos to them about what he perceived to be Defendant's discriminatory practices towards Plaintiff, to no avail. (P. Exhibits 25 and 26).

These statements constitute evidence of discrimination as witnessed by two (2) of Plaintiff's co-workers, which directly contradict Defendant's proffered reasons for its actions. They simply add to the ever-mounting list of contradictory statements and existing evidence in this case, which are only proper for a jury to evaluate. Although Defendant calls these statements "opinions", the Court must accept them as they are, and they nevertheless serve to defeat summary judgment. <u>See</u> <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 59 (1st Cir. 2000) ("For purposes of summary judgment, we cannot weigh the credibility of witnesses making these comments and must assume they were made as stated.").

In sum, although Defendant has articulated reasons for its actions, viewing the evidence in a light most favorable to Plaintiff as the non-moving party, the Court finds that there is sufficient evidence to create a triable issue as to whether the reasons proffered by Defendant were pretextual and motivated by discriminatory animus. As stated by the Court of Appeals for the First Circuit ("First Circuit"), proof of pretext is not governed by a "mechanical formula" and may be presented in several different ways. Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003). One appropriate way is to show that the employer's explanation is unworthy of belief, and where, as here, there is conflicting evidence and testimony, "[d]eterminations of motive and intent, particularly in discrimination cases, are questions better suited for the jury." McDonough v. City of Quincy, 452 F.3d 8, 19 (1st Cir. 2006) (quoting Mulero-Rodríguez v. Ponte, 98 F.3d 670, 677 (1st Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 2455, 106 S.Ct. 2505, 2513 (1986) ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions").

For these reasons, Defendant's Motion for Summary Judgment, as to discrimination based on age and race, is DENIED.

### B. Retaliation.

Plaintiff avers that, after she filed her EEOC complaint in December 2020, she was retaliated against, and consistently assigned less credits. To prove Plaintiff's claim, she must make a *prima facie* showing that she engaged in ADEA-protected conduct; was thereafter subjected to an adverse employment action; and establish a causal connection between the protected conduct and the adverse action. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991); Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir. 1991).

There is no doubt that Plaintiff meets the first two (2) criteria, insofar as she filed a claim before the EEOC and suffered a reduction in salary and in course assignments. Defendant only offers a discussion as to the third element, averring that Plaintiff cannot establish a causal connection between the protected conduct and the actions. The Court disagrees, and finds this is also a matter that must be entertained by a jury.

Plaintiff was assigned three (3) courses (or nine (9) credits) for the January-March 2021 trimester, just after the EEOC complaint was filed.[6] In April 2021, she was assigned two (2) courses (or six (6) credits). By the time Plaintiff was assigned one (1) course (three (3) credits) in September 2021, eight (8) months had passed between the time Plaintiff filed her EEOC charge and the action complained of. Thus, Defendant proffers there is no temporal nexus between the protected activity and the alleged adverse employment action.

In determining whether it is appropriate to take a retaliation case from the jury, the Court's focus must be on "the evidence as a whole." Mesnick, 950 F.2d at 827. The First Circuit has held that "[t]here are many sources of circumstantial evidence that, theoretically, can demonstrate retaliation in a way sufficient to leap the summary judgment or directed verdict hurdles," and the critical inquiry in the end becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question. Mesnick, 950 F.2d at 828; González-Bermúdez v. Abbott Lab's PR Inc., 214 F.Supp.3d 130, 159-60 (D.P.R. 2016).

The Court finds the facts of this case, taken together, make out such a question at

---

[6] Defendant also admits it had originally assigned Plaintiff only two (2) courses, or six (6) credits for the January-March 2021 trimester, and the third course was assigned to her only after another professor declined to teach it. (P. Exhibit 12, pp. 97-98).

this juncture.  By the time Plaintiff's EEOC complaint was filed in December 2020, the courses for the second trimester (beginning January 2021) had already been assigned, so the nine (9) credits she was assigned for this term are not relevant.  It is undeniable that beginning with the April-June 2021 trimester, Plaintiff was consistently awarded less credits and the UPRC was on notice about the EEOC claim.[7]  In April 2021, Plaintiff was assigned two (2) courses (six (6) credits, one of the classes being online).  Thereafter, she was consistently only assigned one (1) course for five (5) consecutive trimesters, and at least three (3) of those courses were online.  Examined as a whole in the light most flattering to Plaintiff, and combined with the contents of the Pérez' Statement, these facts are close enough in time and serve to create a triable issue as to whether Plaintiff was punished for filing her EEOC claim.

Plaintiff also brings forth a retaliation claim under state law pursuant to Law No. 115, P.R. Laws Ann. tit. 29, § 194 *et seq*.  Law 115 is Puerto Rico's anti-retaliation statute, which proscribes an employer from discharging, threatening or otherwise discriminating against an employee if said employee "offer[s] or attempt[s] to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative, or judicial forum in Puerto Rico, when such expressions are not of defamatory character or constitute disclosure of privileged information established by law."  P.R. Laws Ann. tit. 29, § 194a(a).  This is the local equivalent of Title VII's and the ADA's retaliation

---

[7] The Court understands that the April-June class schedule was assigned long before that. This was admitted by Defendant when Plaintiff petitioned to teach a summer course in May 2020 and was told they had already been assigned.  See Uncontested Fact No. 15.  Presumably then, the assignment of classes for the April-June term was done in February or March, perhaps even in January, making the time span substantially shorter than Defendant argues, and well within what may be considered retaliatory in nature.  See Fernandez-Ocasio v. WalMart Puerto Rico Inc., 94 F.Supp.3d 160, 173–74 (D.P.R. 2015) (actions longer than three months after protected activity are insufficiently connected to support a reasonable inference of retaliatory motive).

provisions. Caez-Fermaint v. State Ins. Fund Corp., 286 F.Supp.3d 302 (D.P.R. 2017) (claims under Law 115 are regularly analyzed in a similar fashion to ADA retaliation claims); Peña-Alcántara, 2009 WL 890467, at *5 (noting that Law 115 is "parallel to the federal Title VII."). As such, the analysis for a Law 115 retaliation claim remains the same as for its federal counterparts. Quevedo-Gaitán v. Sears Roebuck de Puerto Rico, Inc., 536 F. Supp.2d 158, 171 (D.P.R. 2008).

As Plaintiff's federal retaliation claims survive to see another day, so too does her Law 115 claim. Rivera v. Empresas Y-Nuina, Inc./Kikuet, Civil No. 10-1574 (GAG), 2011 WL 3443086 at *5 (D.P.R. Aug. 8, 2011) (denying summary judgment based on court's assessment of ADA retaliation claim).

For these reasons, Defendant's Motion for Summary Judgment of the retaliation claims is DENIED.

## C. Defendant's New Argument in its Reply.

As a final matter, Defendant includes a new argument in its Reply, to wit, that Plaintiff failed to exhaust administrative remedies and failed to contest the lack of course appointments before the corresponding university forums. It avers that under Section 65.16 of the UPR's General Regulations and the "Regulation for Administrative Appeal Procedures of the University of Puerto Rico," a professor who disagrees with the course assignments can file an appeal before the faculty dean. Thus, Plaintiff's failure to exhaust the UPRC's internal appeals procedures bars her from bringing this case, or at least prevents her from questioning the course assignments.

Unfortunately, those regulations are not on the record before the Court. Furthermore, as candidly argued by Plaintiff, this is an argument that was not included

in Defendant's initial motion for summary disposition of this case. It has been well established that a litigant may not use a reply to rehash old arguments or to assert arguments it could and should have presented in an earlier memorandum. Southwire Co. v. Ramallo Bros. Printing, Inc., 540 F.Supp.2d 307 (D.P.R. 2008); González-Cantón v. Mad Ruk Ent., Inc., Civil No. 22-1458 (CVR), 2023 WL 4546545, at *9 (D.P.R. July 13, 2023).

Defendant explains its tardiness indicating that it was replying to Plaintiff's "new" argument presented in her opposition, namely, that UPRC failed to follow certain established parameters for the assignment of classes (as outlined in Certification 33). However, this explanation was not even mentioned in Defendant's Reply but rather in another filing altogether, namely, its "Opposition to Plaintiff's Motion to Strike." (Docket No. 125).

Nonetheless, Plaintiff has always alleged that less qualified, less senior, and less experienced professors were assigned more classes than her, based on her age and race. See Docket No. 40, ¶¶ 33, 34, 35, 38, 40, 41, 44, 46, 49, 52. In other words, although Plaintiff might not have specifically cited to Certification 33 in her original pleadings, she has always argued that the assignment of classes was discriminatory instead of being based on seniority, qualifications and experience. This argument should therefore come as no surprise to the UPRC.[8]

Time and again, the First Circuit has made clear that a party waives any argument raised for the first time in a reply brief. See North American Specialty Ins. Co. v. Lapalme,

---

[8] Defendant, in fact, raised the affirmative defense of failure to exhaust administrative remedies in its the Answer to the Amended Complaint. See Docket No. 41, p. 15, ¶ 9. If it failed or forgot to raise this argument at the summary judgment stage, that is a predicament of its own making.

258 F.3d 35, 45 (1st Cir. 2001) ("absent exceptional circumstances, an appellant cannot raise an argument for the first time in a reply brief."). This precedent has likewise been followed by other courts in this circuit and by this district.  See, *e.g*., Murray v. Uber Tech., Inc., 486 F.Supp.3d 468, 473 (D.Mass. 2020); Att'ys Liab. Prot. Soc'y, Inc. v. Whittington Law Assocs., PLLC, 961 F.Supp.2d 367, 374 (D.N.H. 2013); González-Cantón, 2023 WL 4546545, at *9.  The Court sees no reason to deviate from this standard, and will not consider this belated defense at this juncture.

## CONCLUSION

In view of the foregoing, the Court finds there are issues of material fact that prevent summary disposition of this case at this stage.  Consequently, Defendant's "Motion for Summary Judgment" (Docket No. 66) is DENIED.

A Settlement Conference, Pre-Trial Conference and Jury Trial will be set by separate Order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 13th day of March 2025.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE